# IN THE COURT OF APPEALS OF IOWA

No. 16-0647
Filed September 13, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CODY ALEXANDER PLUMMER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Cody Alexander Plummer appeals from a verdict of guilty on a charge of first-degree robbery. **AFFIRMED.**

R.E. Breckenridge of Breckenridge Law P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, Elisabeth Reynoldson, Special Counsel (until withdrawal), and Kevin Cmelik, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Tabor, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Cody Alexander Plummer appeals from a verdict of guilty on a charge of first-degree robbery. We affirm.

## I. Background Facts and Proceedings

Shortly before the closing time on February 10, 2015—pursuant to a plan developed the evening before—Riley Mallett, Myles Anderson, K'Von Henderson, Dayton Nelson, and Plummer gathered together to rob the Greenwood Pharmacy in Waterloo. The original plan was for Anderson and Mallett to enter the premises. About ninety minutes before entry, the plan was changed when Anderson backed out and Plummer replaced him. Nelson and Henderson were to be getaway drivers. Two automobiles were employed; the items taken were to be deposited in the vehicle Nelson was driving, and Henderson was to pick up Plummer and Mallett at a designated location.

Nelson drove Mallett, Plummer, and Anderson to the drug store. Anderson possessed a gun that was delivered to Mallett or Plummer after they arrived at the drug store. Nelson testified that both Mallett and Plummer were there and, though he was not positive which one took it, he was certain one of them accepted the gun. Henderson proceeded on to the pickup point where he was to wait. Mallett and Plummer were both wearing masks when they entered the drug store, and Mallett went to the front. A note stated, "Give me all of the Xanax and all the Promethazine [and] Codein[e] before I shoot this bitch up." After moving to the back of the drugstore Mallett brandished the gun and verbally repeated the note's commands. The pharmacist, Wes Pilkington, believed the handgun looked like the gun police carry and complied with Mallett's request.

Mallett was wearing a mask, but Pilkington was able to identify him at trial. Plummer stayed at the front of the store and asked for money, and the clerk complied.

Plummer and Mallett were able to put the loot and the gun into the trunk of the vehicle Nelson was driving, but Mallett and Plummer were arrested before they made it to the getaway vehicle being driven by Henderson. Both were apprehended in the vicinity of the drug store. Nelson, Anderson, and Henderson eventually gathered at Nelson's residence with the proceeds from the robbery, which were divided among the three of them.

Law enforcement proceeded to the Nelson residence and were greeted by Nelson's dogs. Henderson and Nelson began to run, but it is unclear whether they were trying to restrain the dogs or escape. As Henderson ran, his cell phone dropped out of his pocket. Records from the cell phone reflected multiple calls among the participants from their respective cell phones immediately before the robbery.

In a post-arrest interview, Plummer described what had happened at the drug store in detail and admitted taking money from the drugstore clerk. He said he ran out of the back door of the pharmacy and threw the loot into the back of the awaiting vehicle.

Henderson, Mallett, and Plummer were tried together. The trial began November 15, 2015, but a mistrial was declared. The second trial began February 9, 2016, and ended February 17, 2016, with a verdict of guilty on the first-degree robbery charge as to all three defendants. Plummer appeals, contending there was insufficient evidence to survive a motion for judgment of

acquittal. He has also filed a pro se brief claiming ineffective assistance of counsel.

## II. Sufficiency of the Evidence

### A. Error Preservation

The State does not contest error preservation.

### B. Scope and Standard of Review

Denial of a motion for judgment of acquittal will be sustained if there is sufficient evidence to support the verdict. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). Sufficiency-of-the-evidence claims are reviewed for errors of law. *Id.* Substantial evidence exists if it would convince a finder of fact of a defendant's guilt beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, and all inferences that may be fairly drawn from the evidence are given to the State. *State v. Showens*, 845 N.W.2d 436, 439-40 (Iowa 2014).

### C. Discussion

Plummer does not contest the evidence supporting the commission of a robbery. His objection concerns the sufficiency of the evidence of a dangerous weapon, which was used to support his conviction of first-degree robbery. Plummer maintains the State did not prove he knew a dangerous weapon would be used in the robbery.

Plummer was involved in the planning and execution of the robbery. Mallett, the other party who entered the pharmacy, was clearly in possession of a handgun similar to the one police carry. Plummer was present when the note was written that threatened to "shoot the bitch up." In addition, Nelson testified

that a gun was used and all of the participants knew it would be. He and Mallett were there together when the handgun was passed out of the window of the automobile Nelson was riding in. Plummer not only knew a gun was involved, but as an aider and abettor and an active participant, he was subject to being charged, tried, and punished as a principal. *See* Iowa Code § 703.1 (2015). Because substantial evidence supports a finding Plummer was guilty of first-degree robbery, the motion for judgment of acquittal was correctly denied.

### III. Ineffective Assistance of Counsel

*A. Preservation of Error*

An exception to the traditional rules of error preservation exists when the claim is ineffective assistance of counsel. *State v. Fountain*, 786 N.W.2d 260, 262-63 (Iowa 2010).

*B. Standard of Review*

When a constitutional issue, such as a claim of ineffective assistance of counsel, is involved our review is de novo. *Lemasters v. State,* 821 N.W.2d 856, 862 (Iowa 2012).

*C. Discussion*

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that: (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). A claim of ineffective assistance of counsel must overcome the presumption that counsel is competent. *Tyler v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation but only that level of representation that is within the normal range

of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Strategic choices after proper investigation are virtually unassailable. *Ledezma*, 626 N.W.2d at 143. For relief to be granted, there must be a determination that but for the ineffective assistance there is a reasonable probability that the result would have been different. *Id.* at 145.

When the record is adequate to make a ruling on ineffective assistance of counsel on direct appeal, we are permitted to proceed with a ruling, but otherwise, the issue must be preserved for possible postconviction relief. *Artzer*, 608 N.W.2d at 531.

Initially, there was some difficulty in finding a court-appointed counsel for Plummer that did not have a conflict of interest, but as of September 23, 2015, he was represented by privately-retained attorneys. His complaint that he was initially represented by several different attorneys has no merit.

Each claim of ineffective assistance of counsel will be considered separately.

1. Failure to Pursue a Motion to Sever

Plummer filed a motion to sever but did so at a point where a privately-retained counsel was becoming involved. The court held the motion in abeyance but gave new counsel the right to revive it at counsel's discretion. New counsel never requested the motion to be considered. There is no authority cited for the claim Plummer's trial should have been separated from the other two co-defendants.

Severance is discretionary with the trial court. *State v. Snodgrass*, 346 N.W.2d 472, 475 (Iowa 1984). To obtain a severance, an accused must show

sufficient conflict to the point of his defense being irreconcilable and mutually exclusive from a co-defendant. *Id.* The evidence has been completely submitted and Plummer has the total record before him, but he has not pointed out where the conflict existed and why he is entitled to severance of his trial from his two co-defendants. When the court is not directed to the record or authorities supporting a contention, an issue may be considered waived. Iowa R. App. P. 6.903(2)(g)(3).

### 2. Lack of Pretrial Motions

Plummer maintains that the lack of pretrial motions indicates the ineffective assistance of counsel. There is no specification as to what pretrial motions Plummer is referring to. Because the allegation is so general, we will not address the issue and, instead, leave it for postconviction relief.

### 3. Myles Anderson's Previous Criminal Act

Evidence was admitted that Myles Anderson had been involved in a robbery where handguns were taken and never recovered. An objection to the testimony was lodged, but it was admitted over the objection—though the testimony was strictly limited to only show how possession of a police-style handgun was obtained by the co-defendants. Counsel cannot be considered ineffective for not objecting when an objection has been lodged and overruled.

### 4. Failure to Depose Dion Nelson

Dion Nelson was not an accomplice, as Plummer insists, but was allowed to testify to the movement of the five participants before and after the robbery. Plummer fails to point out why a pretrial deposition would have been helpful to his defense. Plummer admitted he was involved in the robbery and gave a

detailed statement of the movements of the different co-defendants that did not differ from Dion's testimony. Plummer has failed to point out what he would have gained by counsel deposing Dion or why counsel had a duty to depose him.

5. Allowing Co-Defendants' Police Statements into the Record

Plummer contends that allowing statements of the non-testifying co-defendants into the record violated his right to confront the witnesses. The issue of statements made by non-testifying witnesses was specifically addressed by the court after having been raised by defense counsel. The State agreed only to use a defendant's statements if they were self-incriminating rather than those statements that incriminated a co-defendant.

Plummer directs the court to places in the record where he contends the State violated its agreement and argues counsel was ineffective for failing to object. Two of those times occurred during a hearing held outside the presence of the jury. Two other instances concern statements witnesses testified Mallet made at the time of the robbery, not statements Mallet made to police. The other references Plummer makes concern statements made by Dayton Nelson, the State's primary witness, and Delila Salman—both of whom were subject to cross-examination. Otherwise, he has not directed the court to any place in the record that the State violated the agreement regarding statements of the non-testifying witnesses.

6. Ineffective Voir Dire or Waiver of the Record of Voir Dire

There is no record to determine whether counsel's voir dire was ineffective or inadequate. Plummer's counsel waived the recording of the voir dire.

Plummer asserts the court erred by allowing the record of the voir dire to be waived. The reporting of the voir dire is generally governed by the same rules as are applicable to civil actions. Iowa R. Civ. P. 2.19(4). Waiver of the reporting of voir dire is permitted by Iowa Rule of Civil Procedure 1.903(2). The court did not err in permitting the waiver of the voir dire.

To the extent counsel may have been ineffective by waiving the reporting of the voir dire, Plummer has requested the issue be preserved for postconviction relief. His request is granted.

## IV. Conclusion

We find the motion for judgment of acquittal was correctly denied and the court did not err by permitting the reporting of the voir dire to be waived. We find the record inadequate to resolve the allegation of ineffective assistance counsel based on a lack of pretrial motions, as well as the allegation counsel was ineffective for waiving the record of the voir dire, and we preserve these claims for possible postconviction relief. As to his remaining allegations of ineffective assistance of counsel, we find the record is adequate to address them on direct appeal and those claims are without merit.

**AFFIRMED.**